IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AMALIA MENDEZ,

        Plaintiff,

v.

SECURITAS SECURITY SERVICES,
USA, INC.,

        Defendant.

Case No. 21-2337-DDC-ADM

## MEMORANDUM AND ORDER

Plaintiff Amalia Mendez brings this suit against her former employer, defendant Securitas Security Services, USA, Inc. She asserts claims for sexual and racial harassment and discrimination under Title VII of the Civil Rights Act of 1964 and the Missouri Human Rights Act. *See generally* Doc. 1 (Compl.). In response, defendant has filed a Motion to Stay Plaintiff's Claims and Compel Arbitration (Doc. 44), arguing that plaintiff agreed to arbitrate all employment-related disputes. But the current record contains no evidence that the parties ever agreed to arbitrate their employment-related disputes. Instead, the current record only contains a form that plaintiff signed, merely acknowledging that she read and understood defendant's employee handbook. This acknowledgement isn't a binding agreement to arbitrate all employment-related disputes. For that reason, the court denies defendant's motion. The court explains this ruling, below.[1]

---

[1] Plaintiff requested a hearing on defendant's motion. Doc. 70. Because the court denies defendant's motion, the court denies plaintiff's request as moot.

**I.      Background**

In July 2011, plaintiff began her employment with defendant. Doc. 1 at 3 (Compl. ¶ 19). More than eight years later, in October 2019, she signed an "Administrative Staff Handbook Acknowledgment" form. Doc. 45-2. In that document, plaintiff acknowledged that she received the September 2019 version of defendant's Administrative Staff Handbook. *Id.* The Handbook Acknowledgement reads in full:

> I have received my copy of the 9/19 Administrative Staff Handbook, which outlines the general personnel policies of Securitas governing my employment. I understand that I am required to read and familiarize myself with the information contained in the Handbook. I understand that I am expected to comply with these policies.
>
> Further, I understand and agree that nothing in the Handbook creates or is intended to create a promise or representation of continued employment and that employment at Securitas is employment at will. Employment may be terminated at the will of either the Company or myself, with or without cause. The Company may modify, supplement, terminate or revise any of the provisions of this Handbook, other than the at-will requirement at any time.

*Id.*

Below this text, there are lines for the employee's signature, printed name, and the date. *Id.* Plaintiff signed and dated the Handbook Acknowledgement, October 2, 2019. *Id.* There's no line for Securitas management or a representative to sign the Handbook Acknowledgement. *Id.*

Defendant's 72-page Administrative Staff Handbook discusses its "Mandatory Arbitration Program" in three paragraphs spread across two pages. *See* Doc. 45-1 at 34–35 (Handbook at 30–31). Those three paragraphs generally discuss defendant's "mandatory arbitration program for resolving employment-related disputes" and states that all "non-union employees are subject to the Company's Arbitration Program." *Id.* at 34 (Handbook at 30). The Handbook goes on to explain that the "terms and conditions of the Arbitration Program are

2

contained in the Company's Dispute Resolution Agreement, which is provided to all employees." *Id.* at 35 (Handbook at 31).  The Handbook, in something of a paradox, then directs employees to "contact [their] branch office if [they] need a copy of the Agreement." *Id.*

The record contains a digital copy of a seven-page Dispute Resolution Agreement. *See* Doc. 45-3.  The document reads "Dispute Resolution Agreement" at the top and contains the following introductory paragraph:

> This Dispute Resolution Agreement (the "Agreement") is an **arbitration agreement** governed by the Federal Arbitration Act.  Under the terms set forth below, both you (sometimes to referred to as "Employee") and the Company mutually agree and thus are required to resolve covered claims either may have against the other by Arbitration instead of in a court of law.  Acceptance of this Agreement is a condition of employment with Securitas Security Services USA, Inc.

Doc. 45-3 at 1.  Neither plaintiff nor defendant signed the Dispute Resolution Agreement.  *See generally id.*  Indeed, the document contains no signature line for anyone to sign.  *See generally id.*

In support of its motion, defendant attaches a Declaration from Ms. April Wilson, one of its Area Human Resources Managers.  *See* Doc. 45-4.  In it, Ms. Wilson testified that the exhibits discussed above "are true and correct copies of the Securitas Administrative Staff Handbook and Dispute Resolution Agreement Acknowledgement signed by Plaintiff Amalia Mendez." *Id.* at 2 (Wilson Decl. ¶ 6).  She also testified in her Declaration that "the signatory to the Dispute Resolution Agreement Acknowledgement attests that the employee read and understood the terms contained in the Securitas Dispute Resolution Agreement." *Id.* (Wilson Decl. ¶ 7). According to Ms. Wilson, "[o]n October 2, 2019, Plaintiff Amelia Mendez signed and acknowledged the Dispute Resolution Agreement." *Id.*

Contrary to Ms. Wilson's Declaration, there's no "Dispute Resolution Agreement Acknowledgement" anywhere in the record presented to the court. And, plaintiff testified in her Affidavit that "Securitas never provided [her] with a copy of a Dispute Resolution Agreement or afforded [her] the opportunity to review such Agreement." Doc. 59-4 at 1 (Mendez Aff. ¶ 10). The only document in the record that plaintiff has signed is the Handbook Acknowledgement, dated October 2, 2019. *See* Doc. 45-2.[2] The Handbook Acknowledgement never mentions the Dispute Resolution Agreement. *See id.*

## II.    Legal Standard

The Federal Arbitration Act (FAA) requires that a "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. Section 3 of the FAA permits the court to stay litigation in favor of arbitration. *Id.* § 3. The Supreme Court interprets the FAA to establish a strong federal policy favoring arbitration and thus requiring a "liberal reading of arbitration agreements[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 n.27 (1983). But, the Supreme Court recently clarified, the "federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022); *see also id.* (explaining that the policy "'is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements

---

[2] Plaintiff does "not recall" reviewing the Handbook, signing the Handbook Acknowledgement, or even receiving a copy of either document. *See* Doc. 59-4 at 1 (Mendez Aff. ¶¶ 7–9). But, she doesn't dispute the authenticity of her signature on the Handbook Acknowledgement.

4

upon the same footing as other contracts'" (quoting *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 302 (2010))).

When an agreement contains an arbitration clause, "a presumption of arbitrability arises[.]" *ARW Expl. Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995) (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)). But, the key word in the preceding sentence is the word "agreement." That's so "because 'arbitration is a matter of contract' and the authority of an arbitrator arises only from the parties['] agreement to that forum in advance[.]" *Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1146 (10th Cir. 2014) (quoting *AT & T Techs.*, 475 U.S. at 648–49). So, "'a party cannot be required to submit to arbitration any dispute which it has not agreed so to submit.'" *Id.* (brackets omitted) (quoting *AT & T Techs.*, 475 U.S. at 648–49); *see also Dodson Int'l Parts, Inc. v. Williams Int'l Co.*, 12 F.4th 1212, 1219–20 (10th Cir. 2021) (explaining that "the presumption is not a license to override the parties' expressed intent" and so courts "must not undermine 'the first principle that underscores all the Supreme Court's arbitration decisions: Arbitration is strictly a matter of consent'" (brackets omitted) (quoting *Granite Rock*, 561 U.S. at 299)).

The presumption of arbitrability thus "falls away" when the parties dispute whether they have entered a valid and enforceable arbitration agreement with one another. *See Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998). A court may compel arbitration "only when satisfied that the making of the agreement to arbitrate is not at issue." *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004) (quotation cleaned up). The court now applies these governing principles to this case.

**III.     Analysis**

The parties dispute whether they have entered a valid and enforceable arbitration agreement with one another. So, the presumption of arbitrability "falls away." *Riley Mfg. Co.*, 157 F.3d at 779. The court thus must determine whether such an arbitration agreement exists. To do so, the court applies "ordinary state-law principles that govern the formation of contracts." *Jacks v. CMH Homes, Inc.*, 856 F.3d 1301, 1304 (10th Cir. 2017) (quotation cleaned up).

The parties agree that Missouri law governs whether they entered a valid arbitration agreement. Missouri law tracks the basic principles of contract formation recognized in most states. "Axiomatically, the essential elements of any contract, including one for arbitration, are (1) offer, (2) acceptance, and (3) bargained for consideration." *Jackson v. Higher Educ. Loan Auth. of Mo.*, 497 S.W.3d 283, 288 (Mo. Ct. App. 2016). Defendant, as the party here seeking to compel arbitration, bears the burden of proving these three elements and demonstrating the existence of a valid and enforceable arbitration agreement. *Id.* at 287. If defendant fails to shoulder its burden, "no action to compel arbitration will lie." *Id.* at 288 (quotation cleaned up).

While plaintiff marshals several arguments against arbitration, the answer here is quite simple. Defendant hasn't proved that plaintiff agreed to arbitrate her employment-related disputes. The only evidence defendant provides is the Handbook Acknowledgement that plaintiff signed, acknowledging that she read and understood the policies in defendant's Administrative Staff Handbook. *See* Doc. 45-2. The Handbook Acknowledgement never mentions the Dispute Resolution Agreement. In fact, the Handbook Acknowledgment doesn't even mention the word "arbitration." And while the Handbook itself generally discusses defendant's "mandatory arbitration program[,]" the Handbook explicitly states that the "terms and conditions of the Arbitration Program are contained in the Company's Dispute Resolution

Agreement"—something separate from the Handbook. Doc. 45-1 at 34–35 (Handbook at 30–31). The Handbook asserts that defendant provides the Dispute Resolution Agreement "to all employees." *Id.* at 35 (Handbook at 31). But, oddly, the Handbook also directs employees to "contact [their] branch office if [they] need a copy of the Agreement." *Id.*

It's not clear—at least not on the current record—that plaintiff ever received, or even viewed the Dispute Resolution Agreement. Defendant attached a copy of the Agreement to its motion. But it's not signed by anyone, and defendant furnishes no other evidence of assent. Ignoring that obvious fact, defendant misstates the record. Whether by inadvertence or otherwise, defendant conflates the Handbook Acknowledgement that plaintiff signed on October 2, 2019, *see* Doc. 45-2, with a "Dispute Resolution Agreement Acknowledgement" that appears nowhere in the current record, *see* Doc. 45-4 at 2 (Wilson Decl. ¶ 6).

This misstatement begins with defendant's representative, who swore under penalty of perjury that Exhibit 2 was a "Dispute Resolution Agreement Acknowledgement signed by Plaintiff Amalia Mendez." Doc. 45-4 at 2 (Wilson Decl. ¶ 6). But Exhibit 2 isn't an agreement of any kind. Instead, Exhibit 2 is the Handbook Acknowledgement that plaintiff signed. And it never references the Dispute Resolution Agreement. *See* Doc. 45-2. Compounding this first misstatement, defendant's representative also swore that "[o]n October 2, 2019, Plaintiff Amalia Mendez signed and acknowledged the Dispute Resolution Agreement." Doc. 45-4 at 2 (Wilson Decl. ¶ 7). Nothing in the record contains evidence of such a signature or acknowledgement. On October 2, 2019, plaintiff signed and acknowledged the Handbook Acknowledgement, which, again, never mentions the Dispute Resolution Agreement. And the copy of the Dispute Resolution Agreement attached to defendant's motion is unsigned, contains no place for anyone to sign, and doesn't include a "Dispute Resolution Agreement Acknowledgement." *See*

7

*generally* Doc. 45-3.  Notably, defendant has attached such a signed acknowledgement to its briefing in a different case where it successfully moved to compel arbitration.  *See* Doc. 69-2 at 25.  That a different employee signed and acknowledged that employee's agreement to arbitrate doesn't support the conclusion that *this* plaintiff agreed to arbitrate.  The absence of a signed "Dispute Resolution Agreement Acknowledgement" here is significant.

Next, turn to defendant's briefing, which continues the misstatement.  In a clumsy sleight of hand, defendant's Memorandum refers to Exhibit 2—the Handbook Acknowledgement—generally as "Plaintiff's Signature Page[.]"  Doc. 45 at 7.  In its arguments, defendant pairs this "Signature Page" with the Dispute Resolution Agreement, rather than the Handbook that the "Signature Page" actually acknowledged.  *See id.*  Stacking misstatement atop misstatement, defendant then contends that plaintiff "signed the acknowledgement and continued her employment until the day she resigned, thereby indicating her acceptance of the offer to arbitrate all employment-related claims."  *Id.* (citing Doc. 45-2 (Handbook Acknowledgement)).  None of that is true, at least not on the current record.  In sum, the current record contains no evidence that anyone agreed to anything, let alone agreed to a valid and enforceable agreement to arbitrate.  For that simple reason, "no action to compel arbitration will lie."  *Jackson*, 497 S.W.3d at 288 (quotation cleaned up).

The parties assembled a line of cases evaluating defendant's arbitration agreement in other lawsuits, as well as other parties' agreements.  The court need not discuss those cases in much depth.  On defendant's side of the ledger are cases enforcing valid arbitration agreements where—unsurprisingly—plaintiff and defendant's representative both signed an arbitration agreement, *Miller v. Securitas Security Services USA Inc.*, 581 S.W.3d 723, 730–32 (Mo. Ct. App. 2019); *Thomas v. Dillard's*, No. 4:10CV651MLM, 2010 WL 2522742, at *3 (E.D. Mo.

June 16, 2010), or where plaintiff signed a specific acknowledgement agreeing to arbitrate employment-related disputes, *Keplinger v. Securitas Security Services USA, Inc.*, No. 3:20-cv-05117, 2021 WL 1395206, at *2 (W.D. Mo. Apr. 12, 2021);[3] *McIntosh v. Tenet Health Systems Hospitals, Inc./Lutheran Medical Center*, 48 S.W.3d 85, 89 (Mo. Ct. App. 2001).  On plaintiff's side are several cases denying motions to compel arbitration because, while the plaintiffs in those cases had signed arbitration agreements, defendants conspicuously had not.  And, absent some other evidence that defendant assented to the agreement, those cases held that defendant's blank signature line showed a lack of mutuality.  *See Baier v. Darden Rests.*, 420 S.W.3d 733, 739 (Mo. Ct. App. 2014); Doc. 59-5 at 1–3 (*Jackson v. Securitas Sec. Servs. USA, Inc.*, No. 1816-CV14980 (Jackson Cnty. Cir. Ct. Nov. 1, 2018)); Doc. 59-5 at 5–10 (*Wilbur v. Securitas Sec. Servs. USA, Inc.*, No. 19-00176-CV-W-SRB (W.D. Mo. May 3, 2019), ECF No. 15); Doc. 59-5 at 11–22 (*Hassen v. Securitas Sec. Servs. USA*, No. 1616-CV24191 (Jackson Cnty. Cir. Ct. Mar. 16, 2017)).

Those cases significantly aided the court's understanding of the current issue.  But, to be clear, this case is a different animal.  The record here is unclear whether defendant ever offered a mutual arbitration agreement to plaintiff.  And, more importantly, the current record contains no evidence—none—that plaintiff ever agreed to such an offer.  The only evidence of assent in the current record is plaintiff's signed Handbook Acknowledgement.  But even on its best day, the Handbook merely discusses defendant's arbitration policy in a generalized fashion.  And, under "Missouri law, employee handbooks generally are not considered contracts[.]"  *McIntosh*, 48

---

[3]     Defendant contends that it should prevail here just like it did in *Keplinger*.  But *Keplinger* is distinguishable, and easily so.  There, plaintiff signed and returned a Dispute Resolution Agreement Acknowledgement.  *See Keplinger*, 2021 WL 1395206, at *2.  Defendant attached *Keplinger*'s signed Dispute Resolution Agreement to its Reply brief in this case.  *See* Doc. 69-2 at 25.  But an acknowledgement and agreement for *this case's* plaintiff is conspicuously absent from the current record.  This case's current record includes nothing like *Keplinger*'s did.

S.W.3d at 89;[4] *see also Trunnel v. Mo. Higher Educ. Loan Auth.*, 635 S.W.3d 193, 202 (Mo. Ct. App. 2021) (collecting cases and agreeing with "persuasive precedent instructing that an employee's signature on a form which merely acknowledges receipt of a policy does not express assent to any terms contained in the policy"); *Jackson*, 497 S.W.3d at 290 (holding that employee's "'acknowledgement' of the published ADR [Alternative Dispute Resolution] Policy does not suddenly transmute the ADR Policy into an acceptance of an offer").

In sum, it's unclear whether defendant ever conveyed an offer to arbitrate to plaintiff. And there's absolutely no evidence in the current record that plaintiff accepted any arbitration agreement that defendant may have offered her. The court thus finds that defendant hasn't shouldered its burden to establish the existence of a valid and enforceable arbitration agreement. For that reason, the court can't compel the parties to arbitrate their dispute.

## IV.   Conclusion

Because defendant hasn't established the existence of a valid and enforceable arbitration agreement between the parties, the court denies defendant's Motion to Stay Plaintiff's Claims and Compel Arbitration (Doc. 44). The court also denies as moot plaintiff's Motion for Hearing (Doc. 70) on defendant's motion.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Stay Plaintiff's Claims and Compel Arbitration (Doc. 44) is denied.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiff's Motion for Hearing (Doc. 70) is denied as moot.

---

[4]   In *McIntosh*, the Missouri Court of Appeals enforced an arbitration agreement contained in a handbook acknowledgement form but only because the "signed employee acknowledgement form . . . contained an arbitration clause" that "contemplate[d] a mutual agreement between the parties" to submit employment-related disputes to arbitration. 48 S.W.3d at 89. As explained already, the Handbook Acknowledgement here didn't include such an arbitration clause.

**IT IS SO ORDERED.**

**Dated this 13th day of July, 2022, at Kansas City, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**
